The argument is 17-1478 in Re Chaplin. The argument is 17-1478 in Re Chaplin. Pre-GATT, obviousness double patenting was relatively simple. Once a patent issued, the expiration date was fixed by the issue date. Thus, a later patent would have a longer patent term. Post-GATT, this is no longer true. Rather, post-GATT, the issue date of the patent really provides very little information regarding the patent term. In fact, post-GATT, a later patent can expire long before an early registered patent or long after. Is it your view that the Board committed any error in applying the law as it's been articulated by our court? Yes, absolutely. How so? I think that the problem is that most of the case law that has developed with respect to obviousness double patenting has been developed in a Pre-GATT scenario. The important point is that once a patent issues, you then have this fixed date as to when it's going to expire, 17 years later. Therefore, an application that exists later is going to have potentially a longer patent term than this earlier patent. Obviousness type double patenting was created to get rid of that inequity. In a post-GATT world, that has changed completely. Now a patent issues and its expiration date is unknown. It's based on its priority date. So the priority date becomes very, very relevant here as to what is the priority date. If the priority date, for example, let's just take an example here. Gore-Tex is invented in the year 2000. In 2015, the same company that creates Gore-Tex now invents a drone. Obviously, their preferred plastic is Gore-Tex. So they put Gore-Tex in a dependent claim. They get a patent issued very rapidly. They've got a very complex claim to this drone. They have a dependent claim that says wherein the drone contains Gore-Tex. They want to protect their major product that they've had for years. I'm having trouble following your answer to the Chief Judge's question, other than it was a yes. But what law did the PTO fail to apply properly? It's a one-way test. They follow the law. They cite cases, many of which are post-GATT. We've got Berg. We've got Leonardo, all post-GATT cases. Those post-GATT cases also themselves cite earlier pre-GATT cases, Kaplan and others. It doesn't seem – I'm having trouble understanding how GATT, in 1994-95, changed the law of one-way obviousness type double patenting in light of the fact that our case law has continued to apply it in the same manner after GATT and continued to rely positively on the pre-GATT cases. So what am I missing? What did the PTO precisely get wrong in the law? I think there's two things. I think, one, you have to look at the invention as a whole. That's really, I think, the most important piece that we have here. You have to look at the invention of the whole, as a whole. I mean, that's not just in double patenting, but that's in obviousness generally. How do we do that? We have to look and compare the two inventions. The date that that invention was invented is important in that analysis. How do you compare two inventions without knowing the order in which they were invented? If one is invented 15 years later, how can that now be prior art to something that was invented 15 years earlier, where, in fact, Gore-Tex, for example, is prior art to that drone? The claim to the drone has to issue over that. I'm sorry. I'm struggling a little. Yes. I think Judge Moore is wanting to get a precise answer to the question that now both she and I have raised. Also, I think it would be more helpful if you talked about this case as opposed to some hypothetical case. Okay, we could talk about MVABN. It is a virus. Okay, but what about the question of whether or not, what about our case law? Yes. It seemed to be you were saying that because they have to look at everything in its entirety, that somehow dislodges what they've said in applying our cases. Did they err in their application of our cases? Yes, absolutely, in two ways. And how? In two ways. One is, yes, you have to look at the prior patent, but you have to look at the claimed invention. When was the invention made? I think that is an intrinsic part of this. Okay, so how does that question apply to this case? To this case? What did they say wrong about that? To this case, the only thing that matters to the patent office, and it's a very simplistic way of looking at double patenting, and it's very efficient, but it's not the right way because it ignores all of the equities. The important question here, how they should apply it, is they should look at when was the invention made, the first invention, and compare it. They're taking an invention that can be made 5, 10, 15 years later and calling it prior art to the first invention. It's not prior art. The first invention is real prior art to the second invention, the patent. The patents all, what's being cited against us in the patents, are claims that happen to contain the word MVABN. It was a method of administering, right? A method of, no, that's what they're missing here. They're ignoring the invention completely. Which invention? The original invention? The inventions, they're ignoring the inventions that are in those patents. All of those patents are two separate and distinct inventions, a method of curing cancer or of treating cancer. That's one of the claims that are in these patents. It's a complex method of treating a cancer patient. MVABN, correct? MVABN is recited in many of these simply in a dependent claim. The invention is not MVABN in any of these patents. These patents, the invention, if you look at what is the invention, it is something else. It's a method of treating cancer. With this drug? No, not necessarily. The focus of it is actually the proteins that are in there. Okay. But the patent expressly says with MVABN. In a dependent claim, for example, yes. That's not what the invention is. Dependent claims not part of your invention? I don't get it. What, dependent claims don't matter? They do matter, but if it's only in a dependent claim, it can't be the invention. The invention has to be in the independent claim. You can't have an independent claim without the invention. So you're saying that obviously this double patenting, we only look at independent claims and not dependent claims in our analysis? Is that the rule that you think the board got wrong? I think that's only a piece of it. I think it helps us look at what they're doing wrong. They're not looking at the invention as a whole. And I think that really if you look at the case law in General Foods, I think that is the most applicable case here, you really get a good understanding of the kind of problem that they're having. Comparing, if you look at General Foods, General Foods has a process for making caffeine, which has steps A through H. Steps A and B are, yes, please. To be sure I understand your argument. You're arguing that the error was in the fundamentals of the examination, not in how it was treated after it was determined that the claims are not patentably distinct. I think it occurs at two levels. I think they don't do the right comparison. And I think that they're not, they're taking the, in order to compare the claim, the patented claim, to the claim to MVABN, they're ignoring the invention that's in the patents. They're taking it out. They're eviscerating the claim so that all they're left with is MVABN here, MVABN here, it's obviousness type double patenting. So if for at least some of these rejections, we think that they were correct in saying that those claims are not patently distinct, are you still, I didn't see that the reliance on terminal disclaimer in those cases, those were rejected for double patenting when they should have been rejected on objective grounds of obviousness? Again, it's impossible for any of those claims to be rejected for obviousness because MVABN has priority back earlier than any of these other patents. That's what the, the patent office has taken our initial invention, MVABN, taken these later inventions that occur six years later, method of curing cancer, reversed the time by six years, and said, now we do the analysis. The analysis should be done in the order of invention. When were the inventions made? Two-way double patenting into this one-way double patenting case. I think it needs to be a one-way test, but I think you need to look at. I think the one-way test needs to take into account all the two-way stuff. It needs to look at the inventions in the order they were made. If you reverse the order of the inventions, it starts to not make sense anymore, especially when the first invention, MVABN, was prior art, 102B, against some of these later patents. How can now you eviscerate this later patent, take away everything, take away the invention, be left only with MVABN, where this, the original patent, which were now being, well, the original application, which was earlier, the original invention, which was earlier, how can that possibly, which is prior art against this later patent, how can you now reverse things and say, no, now it's obvious? Again, it doesn't make any sense. It made sense in a post-gap world. Let me tell you why it's just, the equities are very important here. It's an equitable doctrine. It serves really two reasons that have been enunciated well. One is to avoid the extension of time, and in a pre-gap world, again, that was very simple. The patent issues, anything that issues later extends the time. But I think Judge Newman hit the nail on the head with, you have no terminal disclaimers here in these particular patents being cited by the PTO, do you? In these particular, no, there were 34 originally. It's not obvious in this type of patenting if there are terminal disclaimers here, but you weren't willing to file terminal disclaimers here for whatever reason. Yes, that's correct, because there's two reasons to file a terminal disclaimer. There's two equitable reasons. One reason is to prevent this extension of time. That is not an issue. The Patent Office has not raised any issue that we're getting additional time out of this. In fact, we've already filed 10 terminal disclaimers to simplify the issues, which have fixed the date of the patent that's going to issue. We're not getting any patent term extension out of this. That's not an issue at all. The other possibility is this harassment issue. But all of the harassment cases that we've read and everything cited by the PTO with respect to harassment, harassment has to do with claiming essentially the same invention. Here we have two separate and distinct inventions. They're very far removed. They are not essentially the same invention. So there's no equitable reason to have a double patent rejection here. What is present, however, is the opposite, the inequity on Bavarian Nordic. Bavarian Nordic has in these patents diverse different kinds of inventions that they have invested millions of dollars in trying to develop. And now if a terminal disclaimer is filed, all of those, their entire portfolio is linked together, and they can't try to sell off ownership or create new companies with pieces of it. That's an unacceptable solution, file a terminal disclaimer. Why don't we hear from the other side, and we'll reserve the remainder of your time. Good morning, Your Honors. May it please the Court. I would first like to begin by addressing some of the arguments that Chaplain has raised as to the merits of the Board's decision and then conclude with the equities that are present here. First, Chaplain argues that the PTO did not consider the invention as a whole. What I think Chaplain is confusing here is that the Board applied a one-way test here. And what the Board did is it first construed the claims of the application at issue and then construed the claims of the Bavarian Nordic's issued claims. And in comparison to those claims, the Board found, and the examiners as well, found that there was no patentable distinction between claims to a particular product, here the MVA-BNA virus, and claims to a method of using or producing that particular product. Now, I think Judge Moore mentioned the Ingram-Lonardo case. I would just like to quickly address something in my brief. There's a correction I'd like to make. On page 17, in the parenthetical to Lonardo, I would like to strike the N earlier and A later, and I think then that parenthetical is correct. And what the premise of that case, as well as the Pfizer-B-Teva case, is that there is no patentable distinction between methods to a particular product and methods to a claim to that product itself. Why shouldn't they then just be able to raise their arguments that that was incorrect? Maybe it was, maybe it wasn't, in terms of whether there's a patentable distinction, rather than the double patenting. Well, so in finding that there was no patentable distinction between these two, between Chaplin's pending application and Bavarian Nordic's issued claims, the Board found that the pending application was directed to an MVA-BNA product with particular characteristics. Chaplin does not contest that construction of that claim, of the pending claim. What Chaplin contests is the Board's and the examiner's determination that Bavarian Nordic's issued claims are directed to methods of using and producing that same product, MVA-BN. Now, Chaplin concedes that the dependent claims in these patents do recite MVA-BN, which is the same MVA-BN that's recited in Chaplin's pending application. Thus, the Board's and the examiner's finding that there was no patentable distinction between claims to a particular product and claims to methods of using that product was correct. But if the relationship is such that the earlier is not citable against the later, then how can you have a rejection? Well, this case is all about choices, and here the choices that Bavarian Nordic made are what results in this type of rejection being made. Here, Bavarian Nordic chose to file a later application to the MVA-BN product itself, and because it chose to file a later application to that product after it had already filed and received patents on methods of using and producing that product, it's now the reason that this double-patenting problem exists. They say that they aren't identical, but it's the evolution of the science and in the research. Let's accept that position for the point that I'm trying to understand. Well, to the extent that they're asserting that the MVA-BN product is prior art, it was known back when the initial PCT application was filed. What Bavarian Nordic should have done at that point was first file claims protecting that building block itself. Bavarian Nordic concedes that MVA-BN is the building block here, that the current pending patent application is directed to that building block, and it wants to protect that building block, and that these earlier filed patents, which have now issued to Bavarian Nordic, are directed to claims that use that particular building block. So Bavarian Nordic concedes all this, and yet now it's arguing. What Bavarian Nordic is essentially arguing is that a two-way test should be applied here, but it's clear that a two-way test should not be applied. Now, Chaplin's primary argument regarding the equities is that they argue that here there is no time-wise extension of the claims, because they have already terminally disclaimed the pending application against other patents it owns. But as Chaplin mentioned, there are two policies that underlie obviousness-type double patenting. First is to prevent the unjustified time-wise extension, but the second is to avoid the risk of harassment of an alleged infringer by multiple assignees. And as Judge Newman, as you asked, here there is no terminal disclaimer that was filed. You would never get an alleged infringer if you put artificial obstacles in the evolution of an important invention. I had always thought that the office appreciated and that the law accommodated the policy of evolving research, particularly in such complex fields as we have here. But it sounds to me as if that would just end with the policy that's being implemented in this kind of rejection. I would think that one would attempt to accommodate the law as in the past to developments. Sure. I think what Your Honor is pointing to is prior case law like Chaplin, where the court recognized that there might be certain improvements that are made later on that are patentable. And here in Chaplin's pending patent application, this simply isn't the case. In Chaplin's pending patent application, all they claim is an MVA-BNA virus that has certain replication characteristics. Now this is the same MVB-NA virus that is the subject of the prior issued claims that Bavarian Nordic already has and that it filed for before it filed for this later pending application. So I think it might be helpful for Your Honor to actually look at one of the prior issued patents if that would help to determine what Bavarian Nordic previously sought patent protection for and has already issued claims on. Wouldn't what you're saying then work if the later application were just rejected on the ground of obviousness rather than double patenting? No. Because Bavarian Nordic's prior issued patents are not 102e art, they're not available as prior art references, what they are available here for is for the obviousness type double patenting rejection. And here when Bavarian Nordic made choices when prosecuting this application, it chose to file this application later in time, and then it also chose not to file the terminal disclaimer. And the reason it chose not to file the terminal disclaimer, which Chaplin itself concedes, is because it did not want to be unduly restrained in being able to license that application or the prior patents that it already has issued. So I think that goes to the very heart as to why the patent office's rejection here is proper. Because there is this risk of litigation harassment by multiple assignees, and here it's a very real risk because Bavarian Nordic intends to license these patents to different entities. Are there any further questions? Thank you, Your Honor. Your Honor, the PTO has said that Bavarian Nordic has made choices. Really what the PTO is trying to do is eliminate any choices. Yes, Bavarian Nordic filed applications early to MVABN, received some, but they would like to get other patents on MVABN with slightly different language for infringement reasons, certainly. What the PTO is doing is stifling the ability for Bavarian Nordic to make progress, to make new inventions later, completely different inventions, and still continue to develop these additional claims to protect their original subject matter. There is no fear of extending the patent term. All of them are fixed by their priority date. That's not changing anything. The later ones, they're completely different inventions. I mean, I think the talk about harassment is only applicable if you look at the case law. In very narrow circumstances where there's two claims to almost the same thing. Clearly not the case here. I mean, simply overlap between two patents is not enough for harassment. That's simply domination. That's been, by this Court, has been made that it's clear that domination is not the same as double patenting. Two patents can cover some of the same subject matter. The point is you can't cover essentially the same thing. I think the other point that I'd like to make just goes to the case law with respect to what the Patent Office is doing. They're taking a claim that may occur five, six, 15 years later, treating it as prior art to an earlier claim. This is MVABN. This is a claim for curing cancer. They're removing the invention and using words in the claim as prior art. General Foods says you can't do that. In re Serret. In re Sutherland. In re Aldrich. All of them go to the same point. This is not, you can't do this. You can't just ignore what's in the claim. You have to look at the claim as a whole. Look at the invention. Compare the two inventions. And what you see in these cases, whether you go this way or this way, doesn't really matter. They're two completely different inventions. You can't take the invention out of this one to find that they're the same. Thank you. Thank you. We thank both sides. The case is submitted. That concludes our proceedings for this evening. Thank you.